IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JUDY DOE )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ERIC R. GREITENS, Governor of the State )<br>of Missouri, in his official capacity, et al. )<br>)<br>    Defendants. ) | Case No. 4:18-cv-00339 |

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
UNDER RULE 12(b)(6) AND MEMORANDUM IN SUPPORT**

"Judy Doe," a woman who self-identifies as a member of The Satanic Temple, asserts that Missouri's informed-consent law for abortion violates her religious beliefs. Doe does not allege that she believes in Satanism as a personal religion, and she does not allege that Satanism is a religion at all. Rather, she alleges that The Satanic Temple is an "association of politically aware Satanists, secularists and advocates for individual liberty." Doc. 1 ¶ 3. Count I of Doe's complaint asserts that Missouri's informed-consent law establishes a religion because it harmonizes with some religions. Count II asserts that the law infringes her right to freely exercise a religion. This Court should dismiss both counts under Fed. R. Civ. P. 12(b)(6) for at least three reasons.

First, the Supreme Court has squarely rejected the reasoning in her first Count. A law does not establish a religion merely because it harmonizes with or is consistent with that religion. Second, Supreme Court precedent firmly forecloses her free exercise claim

1

because the informed-consent law is neutral, generally applicable, and rationally related to the State's legitimate interest in facilitating informed consent. Third, Doe's free exercise claim also fails because she has not alleged that the informed-consent law interferes with any religious exercise.

## FACTUAL BACKGROUND

Judy Doe alleges that she is a member of The Satanic Temple, an "association of politically aware Satanists, secularists and advocates for individual liberty." Doc. 1 ¶ 3. She does not allege whether she is a "politically aware Satanist," or whether she is merely one of the "secularists and advocates for individual liberty" who do not believe in "Satan" as a supernatural power. *Id.* Instead, she merely asserts that, as a member of this "politically aware" organization, she should "make[] decisions regarding her health based on the best scientific understanding of the world." Doc. 1 ¶ 38. She also believes that nobody else should decide for her whether to have an abortion. *Id.*

Doe challenges Missouri's informed-consent law. That law requires abortion providers to provide women with important information to ensure that the decision to abort is voluntary, informed, and free from coercion. Abortion providers in Missouri must give patients information about basic embryological facts such as the "anatomical and physiological characteristics of the unborn child," and afford women the opportunity to view "an active ultrasound" of the unborn child, at least 72 hours before abortion. Mo. Rev. Stat. §§ 188.027.1(2), (4), (5); 188.027.3; Doc. 1 ¶¶ 23–29. According to Doe, the information abortion providers must give women includes printed materials that state that "[t]he life of each human being begins at conception." Doc. 1 ¶ 24.

2

# ARGUMENT

**I.   Count I fails to state a claim because the informed-consent law does not violate the Establishment Clause simply because some (but not all) religious believers think that life begins at conception.**

Central to Doe's Establishment Clause claim is the contention that the State violated the Establishment Clause by passing an informed-consent law that is consistent with the views of some religions. She asserts that the well-established scientific fact that a unique human being comes into existence at conception is a view shared not just by the State, but also some religions. And she contends that this harmony violates the Establishment Clause. Doc. 1 ¶ 49. That argument lacks merit.

The Supreme Court has expressly rejected that argument in the specific context of abortion. After Congress passed a law to substantially curtail availability of federal funds for abortion, a plaintiff, like Doe, argued that the provision "violates the Establishment Clause because it incorporates into law the doctrines of the Roman Catholic Church concerning . . . the time at which life commences." *Harris v. McRae*, 448 U.S. 297, 318 (1980). But a long line of precedent establishes that a statute does not violate the Establishment Clause simply because it "happens to coincide or harmonize with the tenets of some or all religions." *McGowan v. Maryland*, 366 U.S. 420, 442 (1961). Citing *McGowan*, the Supreme Court in *Harris* unequivocally rejected the plaintiff's argument: "that the funding restrictions in the Hyde Amendment may coincide with the religious tenets of the Roman Catholic Church does not, without more, contravene the Establishment Clause." *McRae*, 448 U.S. at 319–20.

The Supreme Court in *Harris* also refused to reconsider its precedent in *McGowan*, deciding instead that the rule Doe proposes here would lead to absurd results. Disabling the government from passing laws simply because they harmonize with the views of a religion would establish anarchy and give every religious organization a veto over the government. "That the Judaeo-Christian religions oppose stealing does not mean that a State or the Federal Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny." *Id.*

Doe's argument is also self-defeating. If the legislature rescinded the current requirements, the new law would come to harmonize with Doe's purported "religion" and, under her argument, would thus establish Satanism as the official Missouri religion.

The rule opposing Doe's proposition is so well-established that it permits governmental action even if that action is inspired by religion or closely coincides with the tenets of particular religion(s). The plaintiffs in *McGowan* challenged Maryland statutes that restricted a wide variety of behavior on Sundays. *McGowan*, 366 U.S. at 445. The statutes expressly referred to Sunday as "the Lord's day" and prohibited "Sabbath Breaking." *Id.* at 445. The statute also had once been entitled "An Act concerning Religion" before the title was amended. *Id.* at 446. But despite the status of the laws as "undeniably religious in origin," *id.*, the Supreme Court upheld the statutes because they "are no longer exclusively representative of religious interests," *id.* at 435. The statutes had gained a religion-neutral purpose, and the Court held that the pertinent legal purpose of the statue "is not to aid religion but to set aside a day of rest and recreation." *Id.* at 449. The Supreme Court has also upheld prohibitions on bigamy even

4

though bigamy cases were traditionally heard in ecclesiastical courts. *Reynolds v. United States*, 98 U.S. 145, 165 (1878).

These authorities foreclose Doe's argument that a law's harmony with a religion renders it unconstitutional. Because *Harris* affirmatively rejects Doe's argument, this Court need not review Doe's claim under the test established in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). Indeed, the Supreme Court in *Harris* considered the *Lemon* test (under a different name) and quickly concluded that the legislative enactment did not violate that test. *Harris*, 448 U.S. at 319 (citing *Comm. for Pub. Ed. & Religious Liberty v. Regan*, 444 U.S. 646, 653 (1980)).

Individually applying each element of the *Lemon* test further reveals that the test forecloses Doe's argument. Under *Lemon*, a statute is constitutional if "(1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *ACLU Nebraska Found. v. City of Plattsmouth, Neb.*, 419 F.3d 772, 775 (8th Cir. 2005). These considerations are not mandatory elements but rather "serve as no more than helpful signposts." *Van Orden v. Perry*, 545 U.S. 677, 686 (2005) (Rehnquist, C.J., plurality opinion).

Binding authority provides that each of the provisions Doe challenges has a valid purpose. Doe challenges three provisions in Missouri's informed-consent law: one requires abortion providers to give patients information about basic scientific facts such as the "anatomical and physiological characteristics" of the human fetus; the second requires abortion providers to give patients an opportunity to view an active ultrasound; and the third requires abortion providers to afford women at least 72 hours to deliberate

5

before having an abortion. Doc. 1 ¶¶ 23–29. As courts have held, each provision serves at least two legitimate interests.

First, each provision serves the legitimate State interest in ensuring that the decision to obtain an abortion is voluntary, informed, and free from coercion. It is beyond debate that the State has a "legitimate purpose" of ensuring that patients are "fully informed" when they procure abortions. *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 882 (1992) (plurality op.) (upholding an informed-consent law). To serve this critical interest, numerous states, including Missouri, have passed similar provisions to ensure informed consent.

Each of the challenged provisions is geared toward ensuring informed consent. Doe challenges a provision that requires disclosure of basic embryological facts. But the Eighth Circuit has upheld similar provisions. The Court upheld a statute that required physicians to inform women "[t]hat the abortion will terminate the life of a whole, separate, unique, living human being" because "this biological information about the fetus" is "relevant to the patient's decision to have an abortion." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 735–36 (8th Cir. 2008). Ultrasounds, which allow patients to visualize these facts, also serve that function. *Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 803 (7th Cir. 2013) (Manion, J., concurring). And courts routinely uphold waiting periods because "important decisions will be more informed and deliberate if they follow some period of reflection." *Casey*, 505 U.S. at 885.

6

The second goal is the "legitimate and substantial interest in preserving and promoting fetal life." *Gonzales v. Carhart*, 550 U.S. 124, 145 (2007). The State has a substantial interest in encouraging women to choose to protect and preserve human life at the fetal stage and other stages of life. *Id.* at 145–46. Presenting patients with embryonic facts about human life at this stage promotes that legitimate State interest. *See also* Mo. Rev. Stat. § 1.205.1(1) (stating that the Missouri General Assembly finds that "[t]he life of each human being begins at conception"); *id.* § 1.205.2.

Doe expresses disagreement with the Missouri legislature's finding that a genetically unique member of the human species comes into existence at the moment of fertilization. Doc. 1 ¶ 39. But the State's position that an individual, unique human organism comes into existence at fertilization rests on substantial medical authority—in fact, it is a scientific fact not subject to reasonable dispute. *See, e.g.,* Bruce M. Carlson, *Foundations of Embryology* 3 (6th ed. 1996) ("The time of fertilization represents the starting point in the life history, or ontogeny, of the individual."); Ronan O'Rahilly, et al., *Human Embryology & Teratology* 8, 29 (2d ed. 1996) ("[F]ertilization is a critical landmark because, under ordinary circumstances, a new, genetically distinct human organism is thereby formed.").

In any event, a State does not violate the Establishment Clause merely by taking sides in a scientific debate. "The Court has given state and federal legislatures wide discretion to pass legislation in areas where there is medical and scientific uncertainty." *Gonzales*, 550 U.S. at 163 (collecting cases); *Collins v. Texas*, 223 U.S. 288, 297–298 (1912) (affirming the "right of the state to adopt a policy even upon medical matters

7

concerning which there is difference of opinion and dispute"). "The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 35 (1905) (citation omitted). So even if the State's position that a unique human life begins at fertilization were open to scientific dispute, the State would still have full authority to adopt that position.

Thus, the State's policy of advising women seeking abortions that life begins at conception advances the secular purpose in preserving and promoting fetal life. The Supreme Court has recognized that abortion terminates an "infant life." *Gonzales*, 550 U.S. at 159. "[B]y common understanding and scientific terminology, a fetus is a living organism while within the womb, whether or not it is viable outside the womb." *Id.* at 147. Accordingly, under governing Supreme Court case law, the State's informed-consent law unquestionably serves another legitimate secular purpose, *i.e.*, promoting and preserving fetal life by encouraging women to deliberate carefully before making the irreversible decision to have an abortion.

As for the second *Lemon* factor, the informed consent law neither advances nor inhibits religion. Doe has failed to provide any argument for how any religion is advanced by the informed consent law. That law simply "furthers the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed." *Rounds*, 530 F.3d at 734 (quoting *Casey*, 505 U.S. at 882). That the State's position is in line with some religions does not advance those religions. Courts "will not presume that a

8

law's purpose is to advance religion merely because it 'happens to coincide or harmonize with the tenets of some or all religions.'" *Edwards v. Aguillard*, 482 U.S. 578, 615 (1987) (quoting *Harris*, 448 U.S. at 319).

Doe has also failed to allege that the law causes an entanglement with religion. She makes a conclusory allegation that entanglement exists, but alleges nothing further. Doc. 1 ¶ 50. This Court must disregard conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And nothing suggests that the State law interacts at all with religion, much less entanglement with it.

## II. Count II fails to state a claim.

Doe's second count—that the laws violate the Free Exercise Clause—fails to state a claim for two reasons. Her claim is foreclosed by precedent, and she does not allege a religious exercise that conflicts with the statute.

### A. Doe's free-exercise claim fails to state a claim.

Under the Supreme Court's current free-exercise doctrine, "generally applicable, religion-neutral laws . . . need not be justified by a compelling governmental interest." *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 886 n.3 (1990); *see also, e.g., Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1164 (11th Cir. 2016) (applying rational-basis review). A law is generally applicable and religion-neutral if it does not, facially or otherwise, "target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (internal quotation marks and citation omitted).

9

The provisions Doe challenges are religion-neutral and generally applicable. At the outset, the notion that the legislature sought to target The Satanic Temple belies basic historic facts. Missouri passed the pertinent statutory amendments in 2010. S.B. No. 793 (2010). But "The Satanic Temple" in which Doe claims membership did not even exist at that time. Mark Oppenheimer, *A Mischievous Thorn in the Side of Conservative Christianity*, *N.Y. Times* (July 10, 2015), http://goo.gl/8KKQ3N (reporting that the organization began, at the earliest, in 2012).

Moreover, the statute is religion-neutral on its face. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). The informed-consent law does not mention any religion, much less Satanism. The law also is neutral in purpose. A facially valid law can impermissibly target religion if it creates "religious gerrymanders." *Id.* at 534 (citations omitted). Such "religious gerrymanders" are created by narrowly tailoring a statute and granting exemptions so that a provision affects only disfavored religions. *Id.* at 536, 544–45. But this statute applies to people of all religions. The only exemption is for women facing a "medical emergency" who lack the time to receive all the information. Mo. Rev. Stat. § 188.027.1.

Moreover, the law passes rational-basis review. As the Eighth Circuit held in *Rounds*, informed-consent requirements serve vital interests in ensuring that women are fully informed before making irreversible decisions of significant moral gravity. *Rounds*, 530 F.3d at 734.

### B. Doe has not alleged a religious exercise that conflicts with the informed consent law.

Even if *Smith* and its progeny did not foreclose Doe's claim, her claim would still fail because she has not alleged a religious exercise. She has not alleged that her beliefs are religious, and she has not explained how the legal provisions interfere with religious practice.

First, Doe has not alleged that any of her beliefs are religious. "The Supreme Court has reiterated time and time again that personal preferences and secular beliefs do not warrant the protection of the Free Exercise Clause." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1256 (11th Cir. 2012). "There is no doubt that '[o]nly beliefs rooted in religion are protected by the Free Exercise Clause.' Purely secular views do not suffice." *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 833 (1989) (citation omitted). Doe makes conclusory allegations that her views are religious, which this Court must disregard. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). She has failed to allege anything concrete that differentiates her and The Satanic Temple from a political advocacy group.

"In free exercise cases, scrutiny of the [plaintiff's] sincerity is often essential in 'differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud.'" *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citation omitted). Courts must be vigilant to avoid permitting "wily [persons] seeking to use an insincere claim of faith as cover" for a political or personal goal. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1152 (10th Cir. 2013)

(Gorsuch, J., concurring), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).

Doe has failed to allege, beyond conclusory statements, that her views are actually and sincerely religious, not political. She admits that the Satanic Temple comprises a mixture of Satanists with nonreligious individuals. She describes the organization as a "politically" engaged group that includes "secularists" and "advocates for individual liberty" as well as Satanists. Doc. 1 ¶ 3. But nothing in the complaint suggests that Doe herself subscribes to Satanism as a religion, or that she actually possesses any particular religious views. Critically, she does not allege whether she constitutes a "Satanist," instead of just a "secularist" or "advocate for individual liberty." *Id.* In fact, both founders of The Satanic Temple have publicly stated that they do "not actually believe in Satan," and they have stated that The Satanic Temple was founded, not because of supernatural beliefs, but over "a shared distaste for organized religion and an inclination to fight back with mischief." *Oppenheimer*, *supra*, http://goo.gl/8KKQ3N. The founders have also publicly admitted that "they are looking for plaintiffs, willing to identify as Satanists, who will file suit." *Id.*

Second, even if Doe were to allege that she is more than just a politically motivated "advocate for individual liberty," Doc. 1 ¶ 3, Doe has failed to allege any religious exercise that conflicts with the informed consent laws. She alleges that she must "make[] decisions regarding her health based on the best scientific understanding of the world," and that "[s]he alone decides whether to remove [a fetus] from her body." Doc. 1 ¶ 38. But she does not allege that her beliefs forbid exposure to information with which

12

she disagrees. Having the opportunity to view scientific information with which she disagrees does not prevent her from "mak[ing] decisions regarding her health based on the best scientific understanding of the world" or exercising sole authority to decide whether to have an abortion. *Id.*

Nor does Doe allege that her religion forces her to obtain an abortion more quickly than the 72-hour waiting period would allow. Indeed, that provision gives her greater opportunity to discern the "best scientific understanding" of embryology. *Id.* Doe does not plead that her alleged religion motivates her desire to have an abortion, or to have an abortion at any particular time. Just the opposite. She alleges that she "alone decides" whether to abort. *Id.* She has that power regardless of the waiting period. Should she decide to procure an abortion on a specific day, she need only plan ahead to ensure she can schedule her first appointment far enough in advance. At root, Doe seeks to enjoin government speech because she disagrees with it. But nothing she has identified conflicts with any religious exercise.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the complaint for failure to state a plausible claim on which relief could be granted.

Dated:        April 30, 2018                    Respectfully submitted,

**JOSHUA D. HAWLEY**,
Attorney General

 /s/ *D. John Sauer*
D. John Sauer, #58721MO
  First Assistant and Solicitor
Joshua Divine, #69875MO
  Deputy Solicitor
Attorney General's Office of Missouri
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-3321
Fax: (573) 751-0774
E-mail: John.Sauer@ago.mo.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 30, 2018, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on all parties, and a true and correct electronic copy was further served by email on counsel for all parties.

<em>/s/ D. John Sauer</em>