**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

_____

JUDY DOE

        Plaintiff

  -vs-

ERIC R. GREITENS et al

_____

Docket No. 4:18-cv-00339

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**I. Introduction**

In evaluating Defendants' motion to dismiss, the court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("*Twombly*"). A motion to dismiss for failure to state a claim tests the sufficiency of the Complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the Complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. *Twombly*, 550 U.S. at 555. To be plausible on its face, the Complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556, (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

The Complaint alleges at ¶¶38 to 40 that Plaintiff holds a religious belief in The Satanic Tenets:

1

- Plaintiff, as a member of The Satanic Temple, holds the following religious beliefs (the "Satanic Tenets"):

  - A woman's body is inviolable and subject to her will alone;

  - She makes decisions regarding her health based on the best scientific understanding of the world, even if the science does not comport with the religious or political beliefs of others;

  - Human Tissue is part of her body;

  - She alone decides whether to remove Human Tissue from her body; and

  - She may, in good conscience, have the Healthcare Defendants remove Human Tissue from her body on demand and without regard to the current or future condition of the Human Tissue;

  - She must not comply with any law that directly or indirectly, conditions her getting an abortion in a manner antithetical to the Satanic Tenets, including without limitation any law that serves no medical purpose or purports to protect the interests of her Human Tissue.

- Plaintiff does not believe the Missouri Tenets are true.  Specifically, she does not believe:

  - The life of a human being begins at conception; or

  - Abortion terminates "the life of a separate, unique, living human being;" or

  - Abortion is morally wrong.

- The Missouri Tenets and Missouri Lectionary are irrelevant to Plaintiff in making her decision to get an abortion because she believes Human Tissue can be

2

removed from her body on demand and, in good conscience, without regard to the current or future condition of the Human Tissue.

## II. The Missouri Tenet is a Statement of Religious Belief.

These allegations clearly and unambiguously state Plaintiff's religious belief that a "human being" does not come into existence at conception and her fetus is a part of her body which she can, in good conscience, remove without considering its current or future condition (the "Satanic Tenet"). The Court must assume Plaintiff sincerely holds the Satanic Tenet as her religious belief for purposes of the motion to dismiss.[1] *Davila v. Gladden*, 777 F.3d 1198, 1204 (11th Cir. 2015):

> [T]he Supreme Court recently explained that it is not for us to say that a plaintiff's religious beliefs are mistaken or insubstantial. Instead, our narrow function in this context is to determine whether the line drawn between conduct that is and is not permitted under one's religion reflects an *honest conviction*. This rule minds the Supreme Court's warning that judges must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim. A secular, civil court is a poor forum to litigate the sincerity of a person's religious beliefs, particularly given that faith is, by definition, impossible to justify through reason. It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds. It is difficult to gauge the objective reasonableness of a belief that need not be acceptable, logical, consistent, or comprehensible to others. [emphasis in the original, internal quotations and citations omitted]

Defendants argue the Missouri Tenet "happens to coincide or harmonize with the tenets of some or all religions" and therefore does not violate the Establishment Clause. Motion at p. 3. The Eighth Circuit held in *Webster v. Reproductive Health Services*, 851 F.2d 1071, 1076 (8th Cir. 1988) ("*Webster*"), *rev'd other grounds*, 492 U.S. 490 (1989), the Missouri Tenet is "an impermissible state adoption of a theory when life begins." The U.S. Supreme Court declined to review this holding and it stands as the binding interpretation of the Missouri Tenet in this

---

[1] Defendants are free to show at trial that Plaintiff's beliefs are political and not religious.

3

Circuit.[2] *Traditionalist Am. Knights of the Ku Klux Klan v. City of Cape Girardeau*, 897 F.Supp.2d 824, 827 (E.D. Mo. 2012) ("[T[his Court is bound to follow the established law of the Eighth Circuit.")

The Missouri Tenet and Missouri Lectionary cross the line from "coincidence" to "preaching" in violation of the Establishment Clause because they require a consumer of medical services to be exposed to an overtly religious message, regardless of whether she chooses to ignore it. *Abington School District v. Schempp*, 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963) (Reading Bible verses at the start of the school day violates of the Establishment Clause even if students may leave the room.)

Defendants' reliance on *Harris v. Rae*, 448 U.S. 298, 100 S.Ct. 2671, 65 L.Ed.2 784 (1980) ("*Harris*") is misplaced. The statute at issue in *Harris*, the Hyde Amendment, was silent on the question of when a human being comes into existence. It did not state, on its face, a religious belief. The Missouri Tenet does. The Missouri Lectionary requires Plaintiff to acknowledge receipt of and consider Catholic religious doctrine as a condition for getting an abortion. This is a far greater intrusion on Plaintiff's religious beliefs than the federal funding at issue in *Harris*. To argue the Missouri Tenet does not promote a religious point of view is as absurd as claiming Plaintiff is trying to "establish Satanism as the official Missouri religion." See Motion at p. 4.

---

[2] See *Doe v. Greitens*, 530 S.W.3d 571, 579 (Mo. App., 2017) in which the Missouri Court of Appeals ruled "the U.S. Supreme Court refused to consider whether the preamble to Missouri's abortion law was constitutional, because in itself the statement about when human life begins did not regulate conduct in some concrete way." The Missouri Court of Appeals cited the view of Justice John Paul Stevens, who concurred with the Eight Circuit saying the Missouri Tenet is "invalid under the Establishment Clause," because it is "an unequivocal endorsement of a religious tenet of some but by no means all Christian faiths, [and] serves no identifiable secular purpose." *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 566-67, 109 S.Ct. 3040 (Stevens, J., dissenting)

Defendants argue the Missouri Tenet "is a scientific fact not subject to reasonable dispute."  Motion at p. 7.  Defendants cite no legal authority recognizing the Missouri Tenet as a "scientific fact" because none exists.  The Courts have uniformly held that the question of when a human being comes into existence is moral, theological and philosophical – not scientific.

In *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462, U.S. 416, 444 (1983), the U.S. Supreme Court struck down an abortion regulation that required a physician to tell the patient "the unborn child is a human life from the moment of conception."  The Court ruled such "a requirement [is] inconsistent with the Court's holding in *Roe v. Wade* that a State may not adopt one theory of when life begins to justify its regulation of abortions."

In *Acuna v. Turkish,* 192 N.J. 399, 930 A.2d 416, 425 (2007), the unanimous New Jersey Supreme Court said, "there is no consensus in the medical community or society supporting [the] position that a six- to eight-week-old embryo is, as a matter of biological fact-as opposed to a moral, theological, or philosophical judgment - a complete, separate, unique and irreplaceable human being."  The Court recognized the "deep societal and philosophical divide" about "the profound issue of when life begins."  Cf. *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747, 779 (1986) (Stevens, J., concurring) ("[T]here is a fundamental and well-recognized difference between a fetus and a human being.").

Defendants ask the Court to take their side in a "scientific debate" about the veracity of the Missouri Tenet because "there is medical and scientific uncertainty" about when a fetus becomes a "human being."  Motion at p. 7.  But once Defendants concede – as they must – there is no scientific certainty about when a human being comes into existence, then the issue of whether abortion is murder can only be answered in the innermost heart of Plaintiff, not by the State of Missouri. As the Eight Circuit ruled in *ACLU Neb. Found. v. City of Plattsmouth, Neb.*,

5

358 F.3d 1020, 1042 (8th Cir. 2004), *rev'd en banc on other grounds*, 419 F.3d 772 (8th Cir. 2005) ("*City of Plattsmouth*"), "[w]e are all of us on a search for truth, and the Establishment Clause prohibits the government from purposefully steering us in a particular direction.".  See also *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 851, 913, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life."); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) ("At the heart of the First Amendment lies the principle that each person should decide for him or herself the ideas and beliefs deserving of expression, consideration, and adherence. Our political system and cultural life rest upon this ideal.").

The argument that a fetus is a "genetically unique member of the human species" does not bring the question of whether abortion is murder within the purview of the State.  See Motion at pp. 6 to 8.  No doubt abortion kills living tissue with human genomes.  But so does removing a cancerous tumor or amputating a limb.  Whether the tissue being removed is imbued with a humanity that makes its destruction "murder" is a moral, theological and philosophical judgment. It is not a scientific fact.[3]

In this case, Plaintiff demands the freedom to decide for herself whether her fetus is a human being based on her own religious beliefs.  She believes her fetus is not a human being, notwithstanding its genetic destiny. She does not believe abortion is murder.  The Religion Clauses preclude the State of Missouri from suppressing or influencing her right to hold those beliefs and act upon them.

---

[3] *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008), relied on by Defendants, is readily distinguishable.  The Court was not presented with whether the state's formulation of a "genetic" human being violated the Establishment Clause.  The decision therefore made no mention of *Webster*.

6

The State's interest in promoting fetal life does not justify intruding upon Plaintiff's liberty to make her own moral judgment about the humanity of her fetus informed by her religious beliefs. In *Public Health Trust of Dade County v. Wons*, 541 So.2d 96 (Fla. 1989), the Florida Supreme Court reviewed the cases addressing the "delicate balancing analysis in which the courts weigh, on the one hand, the patient's constitutional right of privacy and right to practice one's religion, as against certain basic societal interests" when the parent of minor children refuses medical treatment on religious grounds. The Court protected the parent's right to refuse medical treatment and said:

> Running through all of these decisions, however, is the courts' deeply imbedded belief, rooted in our constitutional traditions, that an individual has a fundamental right to be left alone so that he is free to lead his private life according to his own beliefs free from unreasonable governmental interference.  Surely nothing, in the last analysis, is more private or more sacred than one's religion or view of life, and here the courts, quite properly, have given great deference to the individual's right to make decisions vitally affecting his private life according to his own conscience. It is difficult to overstate this right because it is, without exaggeration, the very bedrock on which this country was founded.

541 So.2d at 98

### III. The Missouri Tenet and Missouri Lectionary Violate the Establishment Clause.

Defendants reliance on *Lemon v. Kurtzman*, 403 U.S. 602 (1971) ("*Lemon*") to support the legality of the Missouri Tenet and Missouri Lectionary is misplaced. The Establishment Clause analysis in this case is governed by the strict scrutiny standard set in *Larson v. Valente*, 456 U.S. 228, 248 (1982) ("*Larson*") ("[W]hen we are presented with a state law granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality.")  The Missouri Tenet is discriminatory on its face and therefore reviewed under the strict scrutiny standard of *Larson*. *City of Plattsmouth*, 358 F.3d at 1032 ("When the challenged government action discriminates among religions we

7

apply *Larson* and review the government action with the 'strict scrutiny' standard" [internal citations omitted]).

Defendants cite no authority to support the interests they claim the Missouri Tenet serves to be compelling for purposes of the Religious Clauses.  That is because no such authority exists.

Defendants argue the Missouri Lectionary is intended to promote an "informed choice" about abortion.  But the Missouri Lectionary is completely silent on the myriad of beliefs on when a human being comes into existence, include the Satanic Tenet.  This void shows the purpose of the Missouri Tenet is to promote the beliefs of the Catholic Church and certain evangelical Christian denominations religious that abortion is murder – the very essence of religious gerrymandering. As the U.S. Supreme Court warned in *Larson*, 456 U.S. at 252-53:

> Religious groups inevitably represent certain points of view and not infrequently assert them in the political arena, as evidenced by the continuing debate respecting birth control and abortion laws. Yet history cautions that political fragmentation on sectarian lines must be guarded against.

There are few absolutes in Establishment Clause jurisprudence.  However, one absolute is the Establishment Clause forbids "government sponsored indoctrination into the beliefs of a particular religious faith." *School Dist. v. Ball*, 473 U.S. 373, 385 (1985) ("*Ball*"); see also *Larson*, 456 U.S. at 244 ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."). The sole purpose of the Missouri Lectionary, as alleged in the Complaint, is to promote the Missouri Tenet - a statement of religious belief held by some–not all–Christians.

Moreover, the *Lemon* test is not satisfied because the Missouri Tenet makes clear the Satanic Tenets do not enjoy the approval of the State of Missouri. That disapproval lies at the

8

core of an Establishment Clause violation. *Ball*, 473 U.S. at 389 ("Government promotes religion as effectively when it fosters a close identification of its powers and responsibilities with those of any — or all — religious denominations as when it attempts to inculcate specific religious doctrines. If this identification conveys a message of government endorsement or disapproval of religion, a core purpose of the Establishment Clause is violated."); *Gillette v. United States*, 401 US 437, 450 (1971) ("[T]he Establishment Clause prohibits government from abandoning secular purposes in order to put an imprimatur on one religion, or on religion as such, or to favor the adherents of any sect or religious organization.").

### IV. The Missouri Tenet and Missouri Lectionary Violate the Free Exercise Clause.

Citing *Employment Div. Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872 (1990) ("*Smith*"), Defendants argue the Missouri Tenet and Missouri Lectionary are "neutral laws of general applicability" and therefore do not violate the Free Exercise Clause. Defendants' Motion at p. 16. The plain meaning of the Missouri Tenets and the Missouri Lectionary controls whether they are content neutral for purposes of the Free Exercise Clause. *Phelps-Roper v. Koster*, 713 F. 3d 942, 950 (8th Cir. 2013). That meaning is derived from the language of the statute and its context. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) ("*Lukumi*").  Defendant's reliance on *Smith* is misplaced because The Missouri Tenets and Missouri Lectionary are not "content neutral" but rather are "an impermissible state adoption of a theory when life begins" with no discernible secular purpose.[4]

---

[4] *Nor* are the Missouri Lectionary and Missouri Tenet "generally applicable laws."  They apply only to a very narrow and targeted subset of the general population— pregnant women seeking abortions in Missouri. This subset is analyzed in abortion jurisprudence as the "relevant denominator." *Planned Parenthood Ark. & Eastern Oklahoma v. Jegley*, 864 F.3d 953, 958 (8th Cir. 2017), *cert. den.* __ U.S. __ (2018).  It is this group of people – and this group alone – who are singled out by the State of Missouri to receive its religious dogma that human life begins at conception.

9

Since the Missouri Tenet and Missouri Lectionary are neither content-neutral nor generally applicable laws, they must be narrowly drawn to serve state interests of the highest order. *Lukumi* 508 U.S. at 546 (1993). Defendants have not made that showing.

Defendants' argue the Missouri Tenet and Missouri Lectionary do not substantially burden Plaintiff's exercise of her religious beliefs. That argument has no merit.  The burden is measured from Plaintiff's perspective.  *A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 264 (5th. Cir. 2010) ("*Needville*") ("The focus of the inquiry is on the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression, as measured from the person's perspective, not from the government's.").  From Plaintiff's perspective, as alleged in the Complaint, the Missouri Tenet and Missouri Lectionary force her to make a Hobson's Choice – either endure the guilt, doubt, shame and expense of subjecting herself to a religious belief she does not share or forego a lawful medical procedure which she has the constitutional right to get.  That Hobson's Choice is imposed in an effort to coerce Plaintiff into changing her religious beliefs and forgo an abortion.  It therefore inflicts a substantial burden on Plaintiff in violation of the Free Expression Clause.  As the Court said in *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1305 (10th Cir.2010):

> [R]eligious exercise is substantially burdened . . . when a government . . . places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherents sincerely held religious belief.

See also *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 718 (1981) (substantial burden exists where the state "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs") and *Hobby Lobby Stores, Inc. v.*

*Sebelius*, 723 F.3d 1114, 1152 (10th Cir. 2013), aff'd sub nom. *Burwell v. Hobby Lobby Stores, Inc*. 134 S. Ct. 2751 (2014) (citing *Calbone* with approval).

The three-day waiting period, a core piece of the Missouri Lectionary, illustrates the coercive pressure the State of Missouri places on Plaintiff to change her mind.  Even a four-year old understands the concept of "time out."  Plaintiff can either sit in "time out" for three days (at her own expense) or forgo an abortion. This is just as coercive as forcing the plaintiff in *Calbone* to either eat a meal that contravenes his religious beliefs or go hungry.

*Smith* made clear its holding does not extend to so-called "hybrid rights" cases involving "other constitutional protections." *Smith*, 494 U.S. at 881 "The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections.").  The Eighth Circuit recognizes the hybrid rights doctrine and has applied it to claims that intertwine the Free Exercise Clause with claims for violations of other constitutional rights arising out of the same set of facts. *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464 (8th Cir. 1991).

A hybrid rights claim asserts a colorable showing of infringement of a companion constitutional right. *Axson–Flynn v. Johnson,* 356 F.3d 1277, 1295 (10th Cir.2004).  The companion constitutional right asserted by Plaintiff in this case is her right to get an abortion without being subjected to an undue burden in violation of *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ("*Roe*").  The Missouri Lectionary imposes an undue burden on Plaintiff's in violation of *Roe* because, as alleged in the Complaint, the Missouri Lectionary serves absolutely no medical purpose.  Rather it is a State sanctioned instrument of psychological torture intended to coerce Plaintiff into changing her religious belief in the Satanic Tenets or

11

punishing her if acts upon her religious beliefs. See Complaint at ¶¶41 and 54.  As the U.S. Supreme Court most recently held in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309, 195 L. Ed. 2d 665 (2016):

> [A] statute which, while furthering a valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends. Moreover, unnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right. [internal quotations and citations omitted]

May 29, 2018

> */s/ W. James Mac Naughton*
> W. James Mac Naughton
> 7 Fredon Marksboro Road
> Newton, NJ 07860
> 732-634-3700 (o)
> 732-875-1250 (f)
> wjm@wjmesq.com
> Bar ID No. 701985NJ
> Attorney for Plaintiff Judy Doe

## CERTIFICATE OF SERVICE

      W. James Mac Naughton certifies that I served this pleading on the persons listed below by ECF on the date of this pleading was filed.

Josh Hawley
Attorney General
D. John Sauer
Deputy General Counsel
P.O. Box 899
Jefferson City, MO 65102
*Attorneys for Defendants*

                                              */s/ W. James Mac Naughton*
                                              W. James Mac Naughton