IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JUDY DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:18-cv-00339 |
| v. ) | |
| ) | |
| ERIC R. GREITENS, Governor of the State ) | |
| of Missouri, in his official capacity, et al. ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM**

Doe has abandoned her legal challenges to Missouri's waiting-period and ultrasound provisions. Her complaint challenges three legal provisions that, respectively, require abortion providers 1) to give patients a booklet that includes information stating that human life begins at conception, 2) to give patients an opportunity to view an active ultrasound, and 3) to fulfill both these requirements at least 72 hours before an abortion. In her response memorandum, Doe chooses to defend only her challenge to the first provision. She does not even mention the ultrasound provision, and she mentions the 72-hour requirement only in passing. She has abandoned any challenge to those latter two provisions.

Supreme Court precedent firmly forecloses Doe's remaining claims—those directed at the booklet provision. Doe cannot distinguish the precedents that foreclose her Establishment Clause claim. She does not even bother to cite—much less try to

distinguish—*McGowan v. Maryland*, the most relevant case. And her attempts to distinguish other cases fail because she relies on precedent that the Supreme Court has expressly overruled and she overlooks that a binding Eighth Circuit case upheld an identical statute.

Doe fares no better with her Free Exercise claim. Supreme Court precedent forecloses that claim as well, and Doe's principal argument again relies on the same authority the Supreme Court expressly overruled. Worse still, Doe compounds her error by misconstruing the legal standard and relying on allegations she did not plead.

**ARGUMENT**

**I.     Doe has abandoned her claims against two of the three legal provisions she tried to challenge.**

In her complaint, Doe challenges three legal provisions: 1) the provision that requires abortion providers to give patients a booklet that includes basic embryological facts, including that "[t]he life of each human being begins at conception" and that abortion ends "the life of a separate, unique, living human being"; 2) the provision that prohibits abortion providers from denying women the right to view an active ultrasound; and 3) the provision that requires abortion providers to comply with these other requirements at least 72 hours before abortion. Mo. Rev. Stat. §§ 188.027.1(2), (4), (5); 188.027.3; Doc. 1 ¶¶ 23–29.

Doe has now abandoned her challenges to the second and third provisions. In the motion to dismiss, the Defendants explained why Doe's Establishment Clause claim and Free Exercise claim fail for each of these legal provisions. Doe has chosen to defend only

her challenges to the first legal provision. Her response memorandum focuses on the requirement that she receive a booklet containing scientific information with which she disagrees. She does not even mention the ultrasound provision. And although she mentions in passing the 72-hour requirement, she does not contend that this provision constitutes an establishment of religion or that her purported religion forces her to obtain an abortion more quickly. Doc. 20 at 11. When a plaintiff fails to defend claims in response to a motion to dismiss, courts routinely hold that the plaintiff has abandoned those claims. *E.g.*, *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 566 (E.D. Mo. 2006), *aff'd* 526 F.3d 1122 (8th Cir. 2008) ("[B]ecause Plaintiffs utterly failed to address the arguments relating to the merits of the federal law claims, the Court dismisses those claims with prejudice."). This Court should dismiss with prejudice Doe's challenge to the ultrasound provision and to the 72-hour provision.

**II.  Doe has failed to state a claim under the Establishment Clause, and the Supreme Court has overruled the principal authority on which she relies.**

Doe's challenge to the booklet provision also fails. She argues that the State's determination that abortion ends "the life of a separate, unique, living human being" is "on its face, a religious belief" that violates the Establishment Clause. But binding Supreme Court precedent holds to the contrary, the Eighth Circuit has upheld a statute that (except for one word) is identical to the Missouri statute, and the Supreme Court has expressly overruled the principal authority on which Doe relies.

Doe asserts that the informed-consent law "is discriminatory on its face" only because some religions, but not others, have arrived at the same conclusion as the facts

3

stated in the informed-consent law. Doc. 20 at 7–8. Thus, she asserts that this Court should review the statute under strict scrutiny. *Id.* But the law is well-settled that a statute does not violate the Establishment Clause at all—much less trigger strict scrutiny—simply because it "happens to coincide or harmonize with the tenets of some or all religions." *McGowan v. Maryland*, 366 U.S. 420, 442 (1961). Relying on *McGowan*, the Supreme Court rejected an argument indistinguishable from Doe's: "that the funding restrictions [against funding abortion] in the Hyde Amendment may coincide with the religious tenets of the Roman Catholic Church does not, without more, contravene the Establishment Clause." *Harris v. McRae*, 448 U.S. 297, 319–20 (1980).

The ruling in *McRae* is not only binding; it also accords with basic common sense. Under Doe's rule, states would violate the Establishment Clause every time they took a position on which different religions disagreed. Doe asserts that the informed-consent law violates the Establishment Clause because the law conforms to the views of some Catholics but that Satanism "do[es] not enjoy the approval of the State." Doc. 20 at 8. Doe's argument proves too much. If Missouri altered its laws so that Satanism "enjoy[ed] the approval of the State," then under Doe's own argument, the new law would violate the Establishment Clause as well, because religions that disagree with Satanism would not enjoy similar approval. Doe's argument, if accepted, would undermine the ability to legislate in any reasonably pluralistic society. For good reason, the Supreme Court has unequivocally rejected Doe's position. *McRae*, 448 U.S. at 319–20 ("That the Judaeo-Christian religions oppose stealing does not mean that a State or the Federal Government may not, consistent with the Establishment Clause, enact laws prohibiting larceny.").

4

Doe tries to distinguish *McRae* by asserting that "the Hyde Amendment . . . did not state, on its face, a religious belief" and that the information in the Missouri booklet does. Doc. 20 at 4. But that argument fails for three reasons. First, Doe overlooks that *McGowan*—on which *McRae* relied—concerned a law that undoubtedly was religious on its face. There, the statute prohibited certain commercial conduct on Sundays. *McGowan*, 366 U.S. at 445. But it went well beyond simple prohibition. The law referred to Sunday as "the Lord's day," prohibited "Sabbath Breaking," and was first entitled "An Act concerning Religion." *Id.* at 446. Yet the Supreme Court upheld the statute because it was "no longer *exclusively* representative of religious interests." *Id.* at 435 (emphasis added). So under *McGowan*, legislation that serves a secular purpose is valid even if it is religious on its face. Doe does not even cite, much less try to distinguish, *McGowan*. Doe cannot purport to distinguish binding Supreme Court precedent when she fails to address the most pertinent decision.

Second, Doe's attempt at distinguishing *McRae* fails because the statement in the informed-consent booklet that abortion ends "the life of a separate, unique, living human being" expresses an indisputable scientific fact; it is not a religious proclamation. Some individuals might adhere to that position for purely religious reasons, but the statement is one of scientific fact. Ignoring the medical authority cited in the motion to dismiss, Doe asserts that "Defendants cite no legal authority recognizing the [statement] as a 'scientific fact.'" Doc. 20 at 5. Not so. Defendants cited the Supreme Court's holding that abortion terminates an "infant life" and that "by common understanding and scientific

5

terminology, a fetus is a living organism while within the womb, whether or not it is viable outside the womb." *Gonzales v. Carhart*, 550 U.S. 124, 147, 159 (2007).

Thus, the Supreme Court has made clear that there is no reasonable doubt that the fetus or embryo is a living member of the human species. *See, e.g.*, *id.*; *accord Stinnett v. Kennedy*, 232 So. 3d 202, 221 (Ala. 2016) (Parker, J., concurring) ("The fact that life begins at conception is beyond refutation.") (citing numerous medical sources); *Nealis v. Baird*, 996 P.2d 438, 453 (Okla. 1999) ("[S]cientific precepts accept as a given that human life begins at conception.") (citing numerous medical sources); *Renslow v. Mennonite Hosp.*, 367 N.E.2d 1250, 1254 (Ill. 1977) ("As medical science progressed, the courts took notice that a fetus is a separate human entity prior to birth. It is by now commonly accepted that at conception the egg and sperm unite to jointly provide the genetic material requisite for human life."); *Puhl v. Milwaukee Auto. Ins. Co.*, 99 N.W.2d 163, 170 (Wisc. 1959), *overruled on other grounds by Matter of Stromsted's Estate*, 299 N.W.2d 226 (Wisc. 1980) (recognizing "the biological fact there is a living human being before viability" and holding that "[i]t would be more accurate to say that the fetus from conception lives within its mother rather than as a part of her").

Third, even if Doe could distinguish *McRae*, and even if she had tried to distinguish *McGowan*, the Eighth Circuit has already upheld as "truthful" and "non-misleading" a statute requiring abortion providers in South Dakota to provide identical information. *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 735 (8th Cir. 2008). The plaintiff in *Rounds* challenged a statute that required abortion providers to inform women that "the abortion will terminate the life of a whole,

6

separate, unique, living human being." *Id.* The Eighth Circuit upheld the statute because the statute merely required "a physician to provide truthful, non-misleading information." *Id.* at 735. Except for the word "whole," the South Dakota statute is identical to the statute at issue here.

Despite this identical language, Doe maintains that *Rounds* "is readily distinguishable." Doc. 20 at 6 n.3. She asserts that *Rounds* did not consider a statute that discussed a human fetus as "a 'genetic' human." *Id.* But Doe neglects to mention that the Missouri statute likewise never mentions the term "genetic." Doe next misstates the Missouri statute and asserts that the informed-consent law requires abortion providers to inform her that "[a]bortion is morally wrong" and that "abortion is murder." Doc. 20 at 2, 6. She asserts that it is improper for the State to make these determinations. *Id.* But Doe provides no citation for these assertions, and for good reason. Nothing in the informed-consent law requires abortion providers to make either assertion. The law requires only that abortion providers give women basic, scientifically accurate information identical to information the Eighth Circuit has already held was "truthful, non-misleading information." *Rounds*, 530 F.3d at 735. Doe is free to make whatever moral judgments she wishes to draw from the basic scientific facts.

Unable to distinguish pertinent precedent, Doe relies on a series of cases that courts have expressly overruled. Doe first cites *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 444 (1983), for the proposition that, under *Roe*, "a State may not adopt one theory of when life begins to justify its regulation of abortions." Doc. 5 at 20. Latching onto this statement, the Eighth Circuit once held that a

7

Missouri statute not at issue in this suit[1] was unconstitutional because it stated that "[t]he life of each human being begins at conception." *Reprod. Health Serv. v. Webster*, 851 F.2d 1071, 1076–77 (8th Cir. 1988), *rev'd sub nom. Webster v. Reprod. Health Servs.*, 492 U.S. 490 (1989).

*Akron* and the Eighth Circuit's decision in *Webster* are inapt because they did not concern the Establishment Clause. But more importantly, Doe neglects to mention that the Supreme Court overruled both decisions. The Supreme Court held that the statement in *Akron* was never anything more than "this Court's dictum," *Webster*, 492 U.S. at 505, and that courts should not interpret the statement to mean anything more than that "a State could not 'justify' an abortion regulation otherwise invalid under *Roe v. Wade* on the ground that it embodied the State's view about when life begins"—that is, states are free to adopt definitions of when life begins so long as they do not use those definitions to undermine rights protected by *Roe*. *Id.*

As the Supreme Court's decision in *Webster* reveals, *Akron* never prohibited states from adopting definitions of when life begins in the first place. But to the extent some people and courts interpreted *Akron* in the manner Doe does, the Supreme Court expressly overruled that interpretation not only in *Webster*, but again three years later: "To the extent *Akron I* and *Thornburgh* [*v. American College of Obstetricians and*

---

[1] Doe suggests that the Eighth Circuit in *Webster* construed section 188.027. Doc. 20 at 3 (stating that the court struck down "the Missouri Tenet"). But the Eighth Circuit interpreted a different statute, section 1.205. *Webster*, 851 F.2d at 1076. Even if the Supreme Court had not vacated the Eighth Circuit decision in *Webster*, Doe's point would still be inapt because the decision concerned a different statute.

*Gynecologists*] find a constitutional violation when the government requires, as it does here, the giving of truthful, nonmisleading information about the nature of the procedure, . . . those cases go too far, are inconsistent with *Roe's* acknowledgment of an important interest in potential life, and are overruled." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 882 (1992).

*Webster* and *Casey* make clear that nothing prohibits Missouri from adopting a theory of when life begins. Moreover, the State can choose sides in medical and scientific debates. *E.g.*, *Gonzales*, 550 U.S. at 163 (collecting cases). And no debate exists here. The Eighth Circuit has held that a statute identical to the one at issue here required only that physicians provide "truthful, non-misleading information." *Rounds*, 530 F.3d at 735. And the Supreme Court has recognized that the fetus or embryo is a living member of the human species. *Gonzales*, 550 U.S. at 147, 159.

Doe manages to cite one Establishment Clause decision, but again, Doe relies on a decision that is no longer good law. Doe cites *ACLU Neb. Found. v. City of Plattsmouth*, 358 F.3d 1020, 1042 (8th Cir. 2004), which concerned a plaintiff's attempt to force a city to remove a monument of the Ten Commandments, for the proposition that "the Establishment Clause prohibits the government from purposefully steering us in a particular direction." Doc. 20 at 5–6. But the Eighth Circuit vacated that decision en banc. 419 F.3d 772, 778 (8th Cir. 2005). The en banc court determined that the panel had erroneously enjoined display of the monument because the panel misunderstood *McGowan*: "Simply having religious content or promoting a message consistent with a

religious doctrine does not run afoul of the Establishment Clause." *Id.* at 778 (alterations omitted) (citing numerous Supreme Court cases, including *McGowan*, 336 U.S. at 445).

### III. Doe has failed to state a claim under the Free Exercise Clause.

Doe's second count—that the informed-consent law violates the Free Exercise Clause—similarly fails to state a claim. In arguing otherwise, Doe misconstrues the legal standard and relies on facts she never pleaded. Both errors are independently sufficient to dismiss the case.

#### A. Doe misconstrues the legal standard.

Under the Supreme Court's current interpretation of the Free Exercise Clause, laws are reviewed under rational-basis scrutiny if they are "generally applicable, religion-neutral laws." *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 886 n.3 (1990). Doe asserts that this Court should apply strict scrutiny. She insists that the informed-consent law is "an impermissible state adoption of a theory when life begins." Doc. 20 at 9. That argument fails for the reasons stated above. She also asserts that the law is not content neutral and not "generally applicable." *Id.* & n.4. These contentions fail.

Doe misconstrues the relevant standard. What matters is whether the statute is "religion-neutral," not whether it is "content neutral." *Smith*, 494 U.S. at 886 n.3. Doe does not directly argue that the informed-consent statute discriminates based on religion, nor could she. As the Supreme Court held just last term, a law is religion-neutral if it does not "target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (internal

quotation marks and citation omitted). The informed-consent law is not facially discriminatory because it does not, on its face, "refer[] to a religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). And to the extent Doe argues that the law has an underlying impermissible purpose of religious discrimination, Supreme Court precedent bars that claim. That situation occurs when a statute creates "religious gerrymanders" by granting exemptions so that a provision affects only disfavored religions. *Id.* at 536, 544–45. This statute does no such thing. It applies to all women regardless of religion, and the only exemption it provides is for women facing a medical emergency. Mo. Rev. Stat. § 188.027.1.

Doe contends that the informed-consent law is not "generally applicable" because it affects only pregnant women seeking abortions. Doc. 20 at 9 n.4. But Doe again misunderstands the legal standard. She tries to incorporate the "undue burden" standard that courts consider when reviewing claims brought under the judicially grafted right to privacy. *Id.* But that analysis does not apply in the Free Exercise context. A law is generally applicable so long as it does not "target the religious for special disabilities based on their religious status." *Trinity Lutheran Church*, 137 S. Ct. at 2019. This law is generally applicable because it applies to all women regardless of their religions (if any).

**B. Doe cannot put off until trial the element of sincerity, and she cannot rely on allegations never pleaded.**

Not only do *Smith* and its progeny foreclose Doe's Free Exercise claim, but her claim also fails because she did not allege that she has an honest religious conviction

about her beliefs, instead of a purely secular, political view. Mot. Dismiss at 12. Doe also fails to allege any exercise that conflicts with her purported religion. *Id.*

The Satanic Temple, in which Doe claims membership, openly boasts that its members lack supernatural beliefs and that the organization instead seeks insincere plaintiffs willing to dress up their political agendas under the garb of religion to spread political "mischief." Mark Oppenheimer, *A Mischievous Thorn in the Side of Conservative Christianity*, N.Y. Times (July 10, 2015).[2] And Doe admits that the group encompasses non-religious, "politically aware" individuals, including "secularists" and "advocates for individual liberty." Doc. 1 ¶ 3. But she does not plead that she adopted her views because of an honest religious conviction.

Doe contends that she need not plead that her beliefs stem from honest religious conviction instead of political beliefs dressed up in religious nomenclature. She instead asserts that this question is better left for trial and that the Court must assume that she sincerely holds her purported beliefs for religious reasons. Doc. 20 at 3 & n.1.

That argument fails because sincerity does not pertain only to the weight of the evidence; it is an element that she must plead. Doe even admits that she cannot succeed without establishing that her assertions "reflect[] an honest conviction." *Id.* at 3 (quoting *Davila v. Gladden*, 777 F.3d 1198, 1204 (11th Cir. 2015) (emphasis omitted)). It is immaterial whether this Court adopts the nomenclature of "honest conviction," as the Eleventh Circuit did, or "sincerity," as many other courts have done. *E.g.*, *Ford v.*

---

[2] https://www.nytimes.com/2015/07/11/us/a-mischievous-thorn-in-the-side-of-conservative-christianity.html.

*McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1152 (10th Cir. 2013) (Gorsuch, J., concurring), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc*., 134 S. Ct. 2751 (2014). In either event, Doe must affirmatively plead that she honestly holds her asserted beliefs as personal religious beliefs; it is not enough to assert that she adheres to beliefs that some other people might hold for religious reasons. "The Supreme Court has reiterated time and time again that personal preferences and secular beliefs do not warrant the protection of the Free Exercise Clause." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1256 (11th Cir. 2012).

Doe likewise has no adequate response to the argument that she fails to plead interference with a religious exercise. She states in her response, for the first time, that if this Court does not enjoin the informed-consent law, she will be forced to forgo abortion. Doc. 20 at 10. But she offers no citation for this assertion. Nor could she. Doe never alleges that the informed-consent law will force her to forgo abortion. She never alleges that her religion prohibits her from becoming exposed to information with which she disagrees. She alleges instead that she must "make[] decisions regarding her health based on the best scientific understanding of the world." Doc. 1 ¶ 38. Exposure to information about basic embryological facts does not obstruct this purported duty because 1) the information is factually true, as the Eighth Circuit held in *Rounds*; and 2) Doe is free to ignore or reject any information that she believes to be unscientific. Doe is free to reject the information in the booklet if she (wrongly) considers the information inaccurate.

## CONCLUSION

This Court should dismiss the complaint for failure to state a plausible claim on which relief could be granted.

Dated: June 5, 2018

Respectfully submitted,

**JOSHUA D. HAWLEY**,
Attorney General

 /s/ *D. John Sauer*
D. John Sauer, #58721MO
  First Assistant and Solicitor
Joshua Divine, #69875MO
  Deputy Solicitor
Attorney General's Office of Missouri
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-3321
Fax: (573) 751-0774
E-mail: John.Sauer@ago.mo.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 5, 2018, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on all parties, and a true and correct electronic copy was further served by email on counsel for all parties.

*/s/ D. John Sauer*