# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JUDY DOE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:18CV339 HEA |
| MICHAEL L. PARSON[1], et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter seeking declarative and injunctive relief comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim, [Doc. No. 17]. Plaintiffs seek (1) declaratory judgment that certain Missouri Statutes are void and (2) injunctive relief against Defendants' enforcement of the statutes. For the reasons below, Defendants' motion to dismiss will be granted.

### Facts and Background

Plaintiff's Complaint alleges the following:

Plaintiff Judy Doe ("Doe" or "Plaintiff") is a competent, adult woman who is pregnant and plans to have an abortion in St. Louis, Missouri. Doe is a Missouri citizen and a member of The Satanic Temple. Doe holds certain religious beliefs

---

[1] Effective June 1, 2018, Michael L. Parson is the Governor of Missouri. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael L. Parson should be substituted for Governor Eric R. Greitens as the defendant in this suit.

as a member of The Satanic Temple. Doe complains that Missouri's Voluntary and Informed Consent law, RSMo § 188.027.1, violates the First Amendment's Establishment and Free Exercise Clauses.

Named as defendants are the Missouri Governor and Attorney General (the "State Defendants"), as well as the Chairman, Secretary and Members of the Missouri Board of Registration of the Healing Arts (the "Board Defendants"), and John Doe I and John Doe II, two medical professionals who are licensed by the state of Missouri to deliver healthcare services in Missouri (the "Healthcare Defendants").

Mo. Rev. Stat. § 188.027.1(2), requires that prior to providing a woman with an abortion, the Healthcare Defendants must deliver to her a booklet prepared by the Missouri Department of Health and Senior Services (the "Booklet"). The Booklet states, in pertinent part, "The life of each human being begins at conception. Abortion will terminate the life of a separate, unique, living human being" (the "Missouri Tenets").

Plaintiffs allege that the Missouri Tenets communicate the religious belief that human tissue *in utero* that is not viable ("Human Tissue") is, starting at conception, a unique human being with a life of its own, separate and apart from the woman whose uterus it occupies. Implicit in this belief is that the destruction of Human Tissue is morally wrong.

The Missouri Tenets are believed by some but not all people in Missouri, including without limitation members of the Catholic Church and some evangelical and fundamentalist Christian congregations.

The Booklet contains detailed descriptions and images of the anatomical and physiological characteristics of Human Tissue at two-week gestational increments from conception to full term.

Mo. Rev. Stat. § 188.027.1(4) requires that prior to providing a woman with an abortion, the Healthcare Defendants "shall provide the woman with the opportunity to view . . . an active ultrasound of the unborn child and hear the heartbeat of the unborn child if the heartbeat is audible" (the "Ultrasound Opportunity"). The Ultrasound Opportunity must include "the dimensions of the unborn child, and accurately portray [] the presence of external members and internal organs, if present or viewable, of the unborn child."

Mo. Rev. Stat. § 188.027.1(4) requires the Healthcare Defendants to wait seventy-two hours after the Ultrasound Opportunity before providing Plaintiff with an abortion (the "72 Hour Waiting Period").

Mo. Rev. Stat. § 188.027.12 requires The Healthcare Defendants to wait twenty-four hours after the Ultrasound Opportunity before providing a woman with an abortion if the 72 Hour Waiting Period is enjoined by the Court (the "24 Hour Waiting Period.").

Mo. Rev. Stat. §188.027.3 also requires a woman to certify in writing that she has received the Booklet and the Ultrasound Opportunity before she may get an abortion (the "Certification Requirement").

The Booklet, the Ultrasound Opportunity, the 72 Hour Waiting Period, the 24 Hour Waiting Period and Certification Requirement are referred to by Plaintiffs as the "Missouri Lectionary." The purpose of the Missouri Lectionary is to "inform" a woman who has decided to get an abortion that the Missouri Tenets are true.

Plaintiffs contend that the effect of the Missouri Lectionary is to:

A) Encourage Plaintiff to believe the Missouri Tenets and forgo an abortion; and

B) Compel Plaintiff to wait and consider the Missouri Tenets and Missouri Lectionary for at least three (3) days before getting the abortion; and

C) Cause Plaintiff doubt, guilt, and shame for getting an abortion.

The Healthcare Defendants are required by law to deliver the Missouri Lectionary to Plaintiff. The Missouri Lectionary is delivered when Plaintiff has already decided to get an abortion.

Plaintiff's religious beliefs include the following (the "Satanic Tenets"):

A) A woman's body is inviolable and subject to her will alone;

B) She makes decisions regarding her health based on the best scientific understanding of the world, even if the science does not comport with the religious or political beliefs of others;

C) Human Tissue is part of her body;

D) She alone decides whether to remove Human Tissue from her body;

E) She may, in good conscience, have Human Tissue removed from her body on demand and without regard to the current or future condition of the Human Tissue; and

F) She must not comply with any law that directly or indirectly, conditions her getting an abortion in a manner antithetical to the Satanic Tenets, including without limitation any law that serves no medical purpose or purports to protect the interests of her Human Tissue.

Plaintiff does not believe the Missouri Tenets are true. Specifically, she does not believe:

A) The life of a human being begins at conception;

B) Abortion terminates "the life of a separate, unique, living human being;" or

C) The removal of Human Tissue from a woman's body is morally wrong.

The Missouri Tenets and Missouri Lectionary are irrelevant to Plainitff in making a decision to get an abortion because she believes Human Tissue can be

removed from her body on demand and, in good conscience, without regard to the current or future condition of the Human Tissue.

Neither the Missouri Tenets nor the Missouri Lectionary is medically necessary for Plaintiff to make an informed decision to get an abortion. Women can and do routinely have safe abortions on demand throughout the country using established medical procedures and without consideration of the Missouri Tenets or the Missouri Lectionary.

**Count I – Establishment Clause**

Plaintiff states the following allegations in support of her claim of a violation of the Establishment Clause:

All people have the right to formulate, hold, change or reject their own belief of whether Human Tissue is the life of a separate and unique human being that begins at conception (the "Freedom to Believe When a Human Being Comes Into Existence"). All women who are contemplating getting an abortion in Missouri have the right, pursuant to the First Amendment, to exercise their Freedom to Believe When a Human Being Comes Into Existence and act upon their belief without interference or influence by the State of Missouri.

All people have the right to formulate, hold, change, or reject their own belief of whether abortion prior to viability of Human Tissue is morally right or wrong (the "Freedom to Believe Abortion is Not Immoral.") All women who are

6

contemplating getting an abortion in Missouri have the right, pursuant to the First Amendment, to exercise their Freedom to Believe Abortion is Not Immoral and act upon their belief without interference or influence by the State of Missouri.

The purpose and effect of the Missouri Tenets and Missouri Lectionary are to promote the religious belief that Human Tissue is, from conception, a separate and unique human being whose destruction is morally wrong. The creation, distribution and enforcement of the Missouri Lectionary promotes the Missouri Tenets in violation of the Establishment Clause of the First Amendment because the State of Missouri is using its power to regulate abortion to promote some, but not all, religious beliefs that Human Tissue is, from conception, a separate and unique human being whose destruction is morally wrong.

The Missouri Tenets and Missouri Lectionary foster an excessive entanglement between the State of Missouri and adherents to the religious belief that Human Tissue is a separate and unique human being from conception whose destruction is morally wrong.

Neither the Missouri Tenets nor the Missouri Lectionary promote the religious belief that Human Tissue is part of a woman's body that may be removed on demand in good conscience and without consideration of the current or future condition of the Human Tissue.

Defendants are acting under color of state law in the creation, distribution and enforcement of the Missouri Lectionary to promote the Missouri Tenets.

Defendants have infringed on Plaintiffs' rights under the Establishment Clause in violation of 42 U.S.C. §1983 in the creation, distribution and enforcement of the Missouri Lectionary to promote the Missouri Tenets.

Plaintiff has been and will be irreparably injured by that violation because the Missouri Tenets and Missouri Lectionary are forced upon her with the intent and purpose to cause her guilt for believing the Satanic Tenets and not believing the Missouri Tenets.

**Count II – Free Exercise Clause**

Plaintiff alleges the following in support of her Free Exercise violation claim:

The Missouri Tenets and Missouri Lectionary discriminate between a viewpoint that adheres to the Missouri Tenets and those viewpoints that do not. Specifically, Missouri Tenets and Missouri Lectionary do not mention the Satanic Tenets or the scientific fact that an umbilical cord makes Human Tissue part of a woman's body.

The Missouri Tenets and Missouri Lectionary substantially burden Plaintiff's ability to act in accordance with the Satanic Tenets. That burden includes, without limitation, forcing Plaintiff to act and forgo acting in a manner

8

that violates her belief in the Satanic Tenets as a condition for getting an abortion in Missouri. The Missouri Lectionary and Missouri Tenets have caused and will cause Plaintiff to endure guilt, doubt, and shame because she believes the Satanic Tenets and does not believe the Missouri Tenets.

Plaintiffs claim Defendants have infringed on Plaintiffs' rights under the Free Exercise Clause in violation of 42 U.S.C. §1983 in the creation, distribution and enforcement of the Missouri Lectionary to promote the Missouri Tenets. Plaintiff claims she has been and will be irreparably injured by the stigmatic injury the Missouri Tenets and Missouri Lectionary force on her as an adherent to the Satanic Tenets.

Plaintiffs seek a declaration that the Missouri Tenets are null and void; a declaration that Mo. Rev. Stat. §§ 188.027.1(2), (4) and (5); 188.027.3; and 188.027.12 are null and void; a declaration that Plaintiff may obtain an abortion without complying with Mo. Rev. Stat. §§ 188.027.1(2) (4) and (5); 188.027.3; and 188.027.12; a declaration that the Healthcare Defendants may provide Plaintiff with an abortion without complying with Mo. Rev. Stat. §§ 188.027.1(2)(4) and (5); 188.027.3; and 188.027.12.

Plaintiffs also seek an injunction against Defendants from enforcing Mo. Rev. Stat. §§ 188.027.1(2), (4) and (5) and 188.027.3 or 188.027.12 against Plaintiff.

9

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content...allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## Discussion

In support of their motion to dismiss Plaintiff's Complaint for failure to state a claim, Defendants assert that Count I should be dismissed because Missouri's informed consent law merely is consistent with certain religions' beliefs, and that

Count II should be dismissed (1) because Missouri's informed consent law is neutral, generally applicable, and rationally related to the State's legitimate interest in facilitating informed consent, and (2) because Plaintiff has not alleged that the informed consent law interferes with any religious exercise.

**Establishment Clause**

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244, 102 S. Ct. 1673, 1683, 72 L. Ed. 2d 33 (1982). It is jurisprudentially elementary that "it does not follow that a statute violates the Establishment Clause because it 'happens to coincide or harmonize with the tenets of some or all religions.'" *Harris v. McRae*, 448 U.S. 297, 319, 100 S. Ct. 2671, 2689, 65 L.Ed.2d 784 (1980) (*quoting McGowan v. Maryland*, 366 U.S. 420, 442 (1961)).

That "[t]he life of each human being begins at conception" and that "[a]bortion will terminate the life of a separate, unique, living human being" are not facially religious statements. These beliefs are neither exclusive to nor universally held by adherents to Catholicism or evangelical Christianity. Nevertheless, Plaintiff asserts that the Missouri Tenets convey the messages that abortion is "morally wrong" and that "abortion is murder." This interpretation is not reasonable. A woman absolutely maintains the right and ability to legally

11

terminate her pregnancy, making the contention that the state legally conflates abortion with murder through the Missouri Tenets unfounded and untenable. A person's belief as to whether abortion is "morally wrong" is, as Plaintiff points out, the subjective conclusion of one's moral, theological, and philosophical ideas and beliefs. The Missouri Tenets do not reach the depth of such beliefs. Rather, the Missouri Tenets merely represent the state's ability to "use its voice and its regulatory authority to show its profound respect for the life within the woman." *Gonzales v. Carhart*, 550 U.S. 124, 157, 127 S. Ct. 1610, 1633, 167 L. Ed. 2d 480 (2007).

Plaintiff argues that the Missouri Tenets are "impermissible state adoption of a theory when life begins." For her contention, she cites the Eighth Circuit's opinion in *Webster v. Reproductive Health Services*, 851 F.2d 1071, 1075-76 (8th Cir. 1988) which held the preamble to a Missouri statute that stated "the life of each human being begins at conception" (the "preamble") was impermissible. Plaintiff claims that the "U.S. Supreme Court declined to review this holding [in *Webster v. Reproductive Health Services*, 492 U.S. 490, 109 S. Ct. 3040, 106 L.Ed.2d 410 (1989)] and it stands as the binding interpretation of the Missouri Tenet in this Circuit."

This argument is unavailing, as the Supreme Court provided guidance to the contrary when it reversed the Eighth Circuit's decision on other grounds in

*Webster*, 492 U.S. 490. The majority opinion did not pass on the constitutionality of the preamble, reasoning that the preamble did "not by its terms regulate abortion." *Id.* at 506. Moreover, the majority wrote that its previous statement from *Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 444 (1983) that "a State may not adopt one theory of when life begins to justify its regulation of abortions" was dictum. *Id.* at 505. It also held:

> The Court has emphasized that *Roe v. Wade* "implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion." The preamble can be read simply to express that sort of value judgment.

*Webster*, 492 U.S. at 506 (*quoting Maher v. Roe*, 432 U.S. 464, 474 (1977)).

The Missouri Tenets neither regulate abortion nor promote religious beliefs. The Missouri Tenets, as the Supreme Court said of the preamble in *Webster*, express the State's value judgment favoring childbirth over abortion. As such, Plaintiff's Establishment Clause claim necessarily fails. Even though the Missouri Tenets are harmonious with some religious beliefs, they are a permissible expression of the State's secular interest in protecting the unborn. *See Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 883, 112 S. Ct. 2791, 2823–24, 120 L. Ed. 2d 674 (1992) ("As we have made clear, we depart from the holdings of *Akron I* and *Thornburgh* to the extent that we permit a State to further its legitimate goal of protecting the life of the unborn by enacting legislation aimed

at ensuring a decision that is mature and informed, even when in so doing the State expresses a preference for childbirth over abortion.").

Plaintiff's Establishment Clause claim also fails with respect to the remainder of the Missouri Lectionary. Plaintiff does not allege that the Booklet contains information about the gestation of a fetus that is factually inaccurate. Neither the Ultrasound Opportunity nor the 72-Hour Waiting Period advance a religion or religious beliefs. It follows that the Certification Requirement, in which a woman only acknowledges receipt of the Booklet and Ultrasound Opportunity, does not implicate the Establishment Clause. Count I of Plaintiff's Complaint will be dismissed.

**Count II – Free Exercise Clause**

"The Free Exercise Clause requires only that the statutes at issue be neutral and generally applicable; incidental burdens on religion are usually not enough to make out a free exercise claim." *New Doe Child #1 v. United States*, 901 F.3d 1015, 1025 (8th Cir. 2018) (*citing Holt v. Hobbs*, 135 S.Ct. 853, 859, 190 L.Ed.2d 747 (2015)). "A law is not neutral, however, if its object or purpose is the 'suppression of religion or religious conduct.'" *Id.* (*quoting Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)).

14

Defendants claim that the Missouri informed consent laws are generally applicable and religion-neutral. In response, Plaintiff argues that "the Missouri Tenets and Missouri Lectionary are not 'content neutral' but rather are 'an impermissible state adoption of a theory when life begins' with no discernible secular purpose."

As previously noted, if a state is not absolutely prohibited from adopting a theory of when life begins, the State has a legitimate, secular interest in "protecting the life of the unborn." *Casey*, 505 U.S. at 883. The content of the Missouri Tenets and Missouri Lectionary (collectively, the "Informed Consent Provisions") are religion-neutral.

Plaintiff's claim that the Informed Consent Provisions are not "generally applicable laws" because they apply only to the narrow category of pregnant women seeking abortions in Missouri similarly fails. For Free Exercise claims, the only relevant categorizations are those based on religion. *Lukumi Babalu Aye*, 508 U.S. at 542–43 ("The Free Exercise Clause protects religious observers against unequal treatment, and inequality results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." (internal citations and quotations omitted)). The Informed Consent Provisions are generally applicable because they

15

are applied to *every* woman who seeks an abortion in Missouri, not just members of the Satanic Temple.

"[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879, 110 S. Ct. 1595, 1600, 108 L. Ed. 2d 876 (1990) (internal citations and quotations omitted)). The Informed Consent Provisions are neutral laws of general applicability. The Informed Consent Provisions prescribe that all women who seek an abortion in Missouri must be given the Booklet, must receive an Ultrasound Opportunity, must wait 72 hours, and must confirm that she received the Booklet and Ultrasound Opportunity before she can get an abortion. The Satanic Tenets proscribe compliance with any law that places conditions on abortion that are antithetical to the Satanic Tenets. Following *Smith*, Plaintiff's faith does not relieve her from compliance with the Informed Consent Provisions.

Plaintiff's argument concerning the "substantial burden" placed on the free exercise of her religion is inapt. The *Sherbert* balancing test, which includes a substantial burden component, was rejected as to generally applicable criminal laws in *Smith*. The Supreme Court indicated that a balancing test was not appropriate for neutral and generally applicable civil laws, either. *Smith*, 494 U.S.

16

at 885 ("The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." (internal quotation omitted)).

Plaintiff also asserts a "hybrid right" theory with respect to her Free Exercise claim. The theory of hybrid rights comes from *Smith*, in which the Supreme Court noted that the First Amendment can bar "application of a neutral, generally applicable law to religiously motivated action" in cases involving "the Free Exercise Clause in conjunction with other constitutional protections." *Id.* at 881. Plaintiff alleges that the accompanying First Amendment right in this case is her fundamental right to get an abortion without undue burden as established in *Roe v. Wade* 410 U.S. 113 (1973). Plaintiff states that the Missouri Lectionary is an undue burden under *Roe* because "the Missouri Lectionary serves absolutely no medical purpose" and "is a State sanctioned instrument of psychological torture intended to coerce Plaintiff into changing her religious beliefs in the Satanic Tenets or punishing her if she acts upon her religious beliefs." This argument is not well taken.

The Eighth Circuit upheld a South Dakota statute with very similar language to the Missouri Tenets in *Planned Parenthood Minn. v. Rounds*, 653 F.3d 662 (8th Cir. 2011). A waiting period and certification requirement were upheld by the

Eighth Circuit in *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526 (8th Cir. 1994). The Ultrasound Opportunity is not burdensome because a woman is given a choice whether to have an ultrasound. The Missouri Lectionary does not place an undue burden on a woman's right to get an abortion. A hybrid right analysis is simply inapt in this case.

## Conclusion

Based upon the foregoing analysis, the Court concludes that Plaintiff's claims set forth in the Complaint necessarily fail.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 17], is **GRANTED.**

Dated this 21st day of February, 2019

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE